IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JON R. DEUTSCH** | § | |
| | § | |
| **VS.** | § | **A-15-CV-975 LY** |
| | § | |
| **MALEK ABIJAOUDE, SR.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is the Defendant Malek Abijaoude, Sr.'s First Amended Motion to Dismiss

(Dkt. No. 18); Plaintiff's Response to Defendant's Second Motion to Dismiss (Dkt. No. 20); and

Supplement to Plaintiff's Response to Defendant's Second Motion to Dismiss (Dkt. No. 21).  The

District Court referred the above-motion to the undersigned Magistrate Judge for a report and

recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

**I.  BACKGROUND**

This suit is one of nearly 400 that the Plaintiff, Jon R. Deutsch, has brought against small

businesses in Austin, Texas. In each complaint, Deutsch alleges that he attempted to visit the

business but could not access it because he is disabled. Accordingly, he has brought suit under Title

III of the Americans with Disabilities Act, 42 U.S.C. §§12181, et seq. ("ADA"), and its attendant

regulations, the Americans with Disabilities Act Accessibility Guidelines, the Texas Accessibility

Standards, promulgated under the Texas Architectural Barriers Act Case, TEX. GOV'T. CODE §469,

and Chapter 121 of the Texas Human Resources Code, TEX. HUM. RES. CODE §121.001 et seq.

The Defendant in this case, Malek Abijaoude, Sr., is the owner of the Phoenicia Bakery,

located at 2912 South Lamar, Austin, Texas 78704, and the real property and improvements at that

location.  Deutsch alleges that in "August of 2015" he patronized Phoenecia Bakery. Dkt. No. 1 at

9.  He states that he "experienced difficulty and discomfort" during his visit, "encountering and

dealing with the lack of an accessible facility." *Id.* He states that:

> The Defendant's Austin location does not have the required number of ADA parking
> spaces. With 1-25 parking spaces, Defendant must have at least <u>one</u> ADA-Compliant
> Van Accessible space (96" Wide with 96" Side Access Aisle). This space must be
> located close to the entrance of the business. Additionally, the business has a
> threshold that exceeds ½" and the access ramp is improperly sloped and dangerous.

*Id*.  Deutsch has embedded photographs of the business's parking lot in his complaint.  *Id*. at 4-8.

He contends that these architectural barriers "denied the Plaintiff full and equal access to facilities,

privileges and accommodations offered by the Defendant." *Id*. at 9.  He alleges that "the failure to

remove the barrier was intentional" as it was "intuitive and obvious, . . . the Defendant exercised

control and dominion over the conditions at this location," and "had the Defendant intended any

other configuration, it had the means and ability to make the change." *Id*.  Deutsch therefore seeks

an injunction compelling Abijaoude to re-stripe the parking lot in order to add the required numbers

of accessible parking spaces and modify the building by installing thresholds of less than ½" at the

entrance.  Deutsch also seeks a declaratory judgment that Abijaoude is not in compliance with the

ADA.  Finally, Deutsch seeks statutory damages of at least $300 per violation of TEX. HUM. RES.

CODE §121, his costs and attorney's fees.

Abijaoude has brought a motion to dismiss in which he argues, *inter alia*, that Deutsch lacks

standing to bring his claim and that his claims are moot.  Dkt. No. 18 at 5-13. Abijaoude not only

moves to dismiss Deutsch's claims, but requests reasonable attorney's fees and costs incurred

defending this suit.  Dkt. No. 18 at 2.

## II.  STANDING UNDER THE ADA

Federal courts are tribunals of limited subject matter jurisdiction and may only entertain a case that fits within the judicial power of Article III of the Constitution and a statutory grant of subject matter jurisdiction, such as federal question jurisdiction under 28 U.S.C. § 1331 and diversity of citizenship jurisdiction under 28 U.S. C. § 1332(a)(1).  13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER. EDWARD H. COOPER, & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3567 (3d ed. 2008).  Subject matter jurisdiction includes the "irreducible constitutional minimum of standing," which has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant[s], and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The party invoking federal jurisdiction bears the burden of proof for establishing these elements.  *Id*.  Where a plaintiff seeks declaratory and injunctive relief, as in this case, the plaintiff must also show a significant possibility of future harm; it is insufficient to demonstrate only past injury.  *See O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).  Mere "'someday intentions'—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564.

In the context of ADA claims, most courts evaluate whether future injury is probable by determining whether the plaintiff is likely to return to the defendant's business.  *E.g., Cortez v. National Basketball Association*, 960 F. Supp. 113, 117-18 (W.D. Tex. 1997) (finding that a plaintiff

lacked standing because she failed to allege that she intended to return to the defendant's events in the future).  Courts have frequently dismissed ADA cases where the plaintiff offered only vague allegations and testimony about a future plan to visit a defendant's property.  *See, e.g., Shotz v. Cates*, 256 F.3d 1077, 1082 (11th Cir.  2001) (holding that plaintiffs lacked standing because they did not allege that they intended to return to a courthouse, and thus faced no "real and immediate threat of future discrimination.").  When analyzing a plaintiff's likelihood of return, courts usually consider:

(1)     the proximity of the defendant's business to the plaintiff's residence,
(2)     the plaintiff's past patronage of the defendant's business,
(3)     the definiteness of the plaintiff's plans to return, and
(4)     the plaintiff's frequency of travel near the defendant.

*D'lil v. Stardust Vacation Club*, 2001 WL 1825832, at *3 (E.D. Cal. Dec. 21, 2001).  Post-suit efforts to bolster standing cannot help, because the court must judge standing based on the facts at the time the suit is filed.  *See Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, 2005 WL 2989307 at *3 (N.D. Tex., Nov. 7, 2005).  *See also Moyer v. Walt Disney World Co.*, 146 F. Supp. 1249, 1253 (M.D. Fl. 2000) (plaintiff's visit to business after complaint was filed did not confer standing); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (that plaintiff made a reservation at defendant's hotel after the complaint was filed was insufficient as standing is determined as of the date the suit is filed).

Some courts have rejected the "intent to return" theory, and have instead relied on what has been described as the "deterrent effect" doctrine to determine whether a Title III plaintiff has established standing. Under this theory, a disabled individual suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there. *Chapman v. Pier 1 Imports*, 631 F.3d 939, 950 (9th Cir.2011). "Just

as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store." *Id.* (internal quotation marks and citation omitted). "This theory is predicated on the ADA's language that a plaintiff need not 'engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply" with the ADA. *Hunter v. Branch Banking and Trust Co.*, 2013 WL 4052411 at *3 (N.D. Tex., Aug. 12, 2013) (quoting 42 U.S.C. § 12188(a)(1)).

In *Betancourt v. Ingram Park Mall, L.P.*, 735 F.Supp.2d 587 (W.D. Tex. 2010), Judge Rodriguez of the San Antonio Division of this court wrote at length on the two theories, contrasting them and the rationales underlying each. In his view, the proper construction of the ADA requires taking a "broader view" of the constitutional standing requirement in ADA Title III cases involving architectural barriers. Thus, he opined that standing would exist "so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant," adding "any disabled plaintiff who alleges that she is being denied the opportunity to visit or is currently being deterred from visiting a public accommodation that is violating Title III alleges sufficient present injury in fact for prospective equitable relief." *Id.* at 604. Importantly, even under this broader view, to have standing the plaintiff "must at least prove knowledge of the barriers and that they would like to visit the building in the imminent future but for those barriers." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir.2000). Thus, under either theory, a plaintiff must demonstrate an intent to visit the defendant's business in the future. *Hunter,* 2013 WL 4052411 at *3.

Deutsch contends that the Fifth Circuit endorsed the broader of the two standing approaches

in *Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011), a Title II ADA case cited in his briefing.

Because an intent to return to, or visit, the defendant in the future is required under either theory,

whether that assessment of *Frame* is accurate is not crucial to the Court's decision. It is, however,

instructive to examine the issue briefly. The questions presented in *Frame* were two: the applicability

of Title II to public sidewalks, and when the statute of limitations for a private citizen's Title II suit

begins to run.  *Id.* at 221.  Thus, standing was far from the heart of the decision.  The case does

include, however, this one-paragraph discussion on the topic:

> The City contends that the plaintiffs lack standing with respect to inaccessible
> sidewalks they have not personally encountered. To be sure, Article III standing
> requires a plaintiff seeking injunctive relief to allege "actual or imminent" and not
> merely "conjectural or hypothetical" injury. Mere "some day" intentions to use a
> particular sidewalk, "without any description of concrete plans," does not support
> standing. But "imminence" is an "elastic concept" that is broad enough to
> accommodate challenges to at least some sidewalks that a disabled person has not
> personally encountered. For example, a plaintiff may seek injunctive relief with
> respect to a soon-to-be-built sidewalk, as long as the plaintiff shows a sufficiently
> high degree of likelihood that he will be denied the benefits of that sidewalk once it
> is built. Similarly, a disabled individual need not engage in futile gestures before
> seeking an injunction; the individual must show only that an inaccessible sidewalk
> *actually affects his activities in some concrete way*.  On remand, the district court
> will be able to apply established standing doctrine to weed out any hypothetical
> claims.  At this point, however, *the plaintiffs have alleged in detail how specific
> inaccessible sidewalks negatively affect their day-to-day lives* by forcing them to take
> longer and more dangerous routes to their destinations.  This is sufficient to support
> their right to sue.

*Frame*, 657 F.3d at 235-36 (emphasis added; footnotes omitted).  Because the *Frame* decision was

not focused on the standing requirements for a Title III ADA claim, it is difficult to conclude from

this single paragraph whether the Fifth Circuit would follow the "deterrent effect" line of cases, or

the "intent to return" theory if squarely faced with that question.  Regardless, even reading the

language of *Frame* liberally, the court required that to have standing a plaintiff must set out facts

sufficient to explain in some detail how the alleged deficiencies "negatively affect their day-to-day lives," and held that mere allegations of non-compliant facilities were insufficient.  Thus, while *Frame* stands for the principle that a disabled plaintiff need not traverse a rocky road to prove that a missing sidewalk renders it inaccessible, he must nonetheless show that the inaccessible feature "actually affects his activities in some concrete way." *Id*. at 236.

## III.  ANALYSIS

### A.      Standing

Abijaoude argues that Deutsch does not have standing to bring an ADA claim against him, because he has failed to plead that he has attempted to enter the business while disabled or that he will attempt to return and is thereby likely to suffer future harm. Abijaoude relies on a response to a discovery request for this proposition. (Dkt. No. 18, Ex. D). In Interrogatory Number Three, Abijaoude asks "Please state every date and time of day you have been on the property and entered or attempted to enter Phoenecia Bakery in the last three years." In response, Deutsch states: "Went to the Phoenicia Bakery 3 years before my back surgery. I do not remember the exact date." *Id.* Abijaoude points out that Deutsch answers in another Interrogatory that he became wheelchair bound after his July 2013 back surgery. *Id.* Thus, Abijaoude asserts, through his representations, Deutsch has not attempted to enter his business since he became disabled.  Deutsch responds that he provided a copy of a "visit log" to Abijaoude which reads "Phoenecia Bakery, 2912 South Lamar, 7/28/2015" in response to discovery requests and pled the date of his visit in his complaint. Deutsch argues that these are sufficient to support his standing to bring an ADA claim against Abijaoude.

In fact the complaint reads "The Plaintiff patronized Phoenecia Bakery located at 2912 South Lamar, Austin, TX 78704 in August of 2015." The visit log indicates that Deutsch "visited" the

property in July of 2015. Abijaoude further presents deposition testimony in which Deutsch testified that he received the "visit log" from his attorney, who told him to go out and check on the businesses on the list to see if those businesses were accessible. Dkt. No. 18, Ex. E. Deutsch testified that his attorney had given him at least twenty-five or so of these lists in order to identify potential targets for ADA accessibility suits. *Id.* Attorney Rosales also testified that he gave Deutsch lists of businesses and Deutsch would go check the businesses to see whether or not they were ADA compliant, and then check the businesses off on the log. *Id.* at Ex. E.

In other architectural barrier cases in which Deutsch has appeared as the plaintiff, this Court found that Deutsch has a pattern of suing randomly selected businesses with which Deutsch has had little or no prior relationship, and no plans of creating one in the future, and which have deficient parking lots and/or thresholds. In many instances, the most interaction Deutsch has ever had with a defendant was to look at the business's parking lot from his car. In this case, despite his log of a "visit," on an undetermined date, and a one-time visit years before he was disabled, Deutsch has failed to plead enough to establish standing. To hold that such a minimal relationship to a business is sufficient to confer standing on Deutsch to sue that business would be to stretch the notion of standing past the breaking point.

And while there is no doubt that a "tester" plaintiff can have standing under the ADA, *Betancourt*, 735 F. Supp. 2d at 605, Deutsch is far from being a "tester." He sued 385 business in 306 days (and those 306 days include all of the intervening Saturdays, Sundays and holidays when the courthouse was closed). He did not provide the businesses pre-suit notice or allow them to cure the deficient parking before suing, and his attorney demanded payment of thousands of dollars in

8

attorney's fees before he would dismiss the suits, even when the problems were quickly remedied. *See, e.g.*, Dkt. No. 6-1 in A-15-CV-1198 LY.

While the ADA does not require notice and an opportunity to cure before suit is filed, that does not mean these facts have no relevance to the overall assessment of Deutsch's intentions, which are "front and center" in this analysis.  As noted above, under either of the competing ADA standing doctrines, an "intent to return" to the business is required.  Reviewing all of the evidence before it, the Court concludes that Deutsch has failed to establish any credible evidence that he had an intention of ever patronizing the Phoenecia Bakery.  Rather, it appears quite clear that Deutsch's sole intent in this campaign of litigation (an intent shared by his attorney) is to collect as much money as possible from the defendants, completely without a relationship with the business. For these reasons, Deutsch has failed to demonstrate he has suffered an "actual or imminent" injury that is not merely "conjectural or hypothetical," or that he has "concrete plans" to patronize the businesses in the future.  He therefore lacks standing to pursue these suits, and they should be dismissed pursuant to FED. R. CIV. P. 12(b)(1).

### B.      Attorney's Fees

Abijaoude requests that he be granted reasonable attorneys' fees under the provisions of 42 U.S.C. § 12205 and costs pursuant to 28 U.S.C. § 1919. Section 12205 grants a court discretion to award reasonable attorneys' fees to the prevailing party in an action brought under the ADA. 42 U.S.C. § 12205.  Here, the Court has not reached the merits of Deutsch's ADA claim, but instead has determined that Deutsch lacks standing to bring such a claim.  Attorneys fees under 42 U.S.C. § 12205 are therefore not appropriate in this case.

28 U.S.C. § 1919 states that "[w]henever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs." 28 U.S.C. § 1919 (emphasis added). *See also Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 n. 8 (10th Cir. 1998) (citing a distinction between the entitlement to an award of costs under Fed. R. Civ. P. 54(d)(1) and an award of just costs under 28 U.S.C. § 1919). Section 1919 is permissive, allows the district court to award "just costs," and does not turn on which party is the "prevailing party. " *Miles v. State of California*, 320 F.3d 986 (9th Cir. 2003). The general costs statute—28 U.S.C. § 1920—similarly provides a court with discretion in awarding costs when it enters judgment, and FED. R. CIV. P. 54(d) "contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F. 3d 783, 793 (5th Cir. 2006). Accordingly, it is appropriate that Abijaoude be awarded his costs.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant Malek Abijaoude, Sr.'s First Amended Motion to Dismiss (Dkt. No. 18) as to the issue of standing, and **DISMISS** all federal claims against the Defendants on that ground. The Court **FURTHER RECOMMENDS** that, pursuant to 28 U.S.C. § 1367(c)(3), the District Judge decline to exercise supplemental jurisdiction over the state law claims and **DISMISS WITHOUT PREJUDICE** all such claims. **FINALLY, IT IS RECOMMENDED** that Abijaoude's request for attorney's fees be **DENIED**, but that the Court award Abijaiude his costs pursuant to Rule 54. The Clerk is directed to remove this case from the docket of the undersigned and return it to the docket of the Honorable Lee Yeakel.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 7ᵗʰ day of March, 2017.


_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE